J-S75010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDRA RAASUL CRISSWALLE | : | |
| | : | |
| Appellant | : | No. 349 WDA 2017 |

Appeal from the PCRA Order Entered February 9, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0015119-2002,
CP-02-CR-0015720-2002

BEFORE:  SHOGAN, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED JUNE 1, 2018**

Appellant, Andra Raasul Crisswalle, appeals from the order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

The tragic facts of this case are summarized as follows.  In the early evening of January 25, 2002, Appellant and a codefendant, William Thompson, entered Mr. Tommy's, which is a restaurant located in the Homewood neighborhood of Pittsburgh.  Upon entering, the two men released a barrage of gunfire at the various patrons in the establishment. The gunshots killed three people: Taylor Coles, an eight-year-old girl; Parrish Freeman, the boyfriend of Taylor Coles's mother; and Thomas Mitchell, a wheelchair-bound individual.

The PCRA court summarized the procedural history of the case as follows:

[Appellant] was charged by criminal information at CC 200215119 with three counts of Criminal Homicide for the shooting deaths of Taylor Coles, Parish Freeman and Thomas Mitchell. The Commonwealth also filed a Notice of Intention to Seek the Death Penalty. At CC 200215720, [Appellant] was charged with one count of Aggravated Assault, one count of Carrying a Firearm Without a License, six counts of Recklessly Endangering Another Person[,[1]] and one count of Criminal Conspiracy. The matter was assigned to the Honorable David R. Cashman, Administrative Judge of the Criminal Division. [Appellant's] first jury trial, in which he was tried jointly with his co-defendant, William Thompson, ended in a mistrial on November 23, 2004, when the jury was not able to reach verdicts on any of the counts as to both [of the] defendants.

The second trial commenced on March 2, 2005, again before Judge Cashman. Between the first and second trial, the Commonwealth withdrew the Notice of Intention to Seek the Death Penalty. At the conclusion of the second trial, on March 23, 2005, [Appellant] was found guilty of three counts of Murder of the First Degree and at all remaining counts at both criminal informations.[1] [Appellant] was sentenced on June 20, 2005 to three consecutive terms of life imprisonment on the murder counts. On the other charges, he was sentenced to not less than ten nor more than twenty years at the Aggravated Assault count; to not less than three and one-half to seven years at the Firearms count; to not less than one (1) nor more than two (2) years at each of the [five] Reckless Endangerment counts and, to not less than ten (10) nor more than twenty (20) years at the Criminal Conspiracy count. The sentences were ordered to run consecutively, for an aggregate term of three life sentences plus twenty[-]eight and one[-]half to fifty[-]seven years [of] incarceration.

    [1] William Thompson's trial again ended in a mistrial when the jury could not agree upon a verdict.

_____

[1] One charge of recklessly endangering another person was later withdrawn.

[Appellant] filed a *Pro-Se* Notice of Appeal on July 19, 2005. Subsequently, on October 14, 2005, a Statement of Matters Complained of on Appeal was filed by appellate counsel which identified twenty-nine (29) distinct claims.

On January 15, 2010, Judge Cashman filed an 86[-]page Opinion addressing each of the twenty-nine (29) claims. Before the Superior Court, however, [Appellant] raised only four (4) claims in his brief[.]

* * *

On February 22, 2012, the Superior Court affirmed the judgment of sentence. A Petition for Allowance of Appeal was then filed with the Supreme Court which raised the second, third and fourth claims that were presented to the Superior Court. On October 16, 2012, the Supreme Court denied the Petition for Allowance of Appeal. A subsequent Petition for Writ of Certiorari with the United States Supreme Court was denied on February 25, [2013].

On February 20, 2014, [Appellant], through new counsel, filed the instant Petition for Post Conviction Collateral Relief. This matter comes before this [c]ourt after the October 25, 2015 recusal of the trial judge, The Honorable David R. Cashman, from the pending PCRA proceedings. In his February 20, 2014 petition, [Appellant] raised [seven] claims[.]

* * *

[Appellant] then filed a Motion to Supplement PCRA on March 10, 2014, raising three additional claims[.]

* * *

The Commonwealth filed a reply, addressing the claims raised in both the original and supplemental petitions on June 6, 2014 and requesting that all claims be dismissed without an evidentiary hearing. On March 19, 2015[,] Judge Cashman issued a Notice of Intention to Dismiss, advising [Appellant] that the [PCRA c]ourt intended to dismiss the Petition on the basis that the claims set forth in the petitions were not sufficiently pled and/or were without merit as a matter of law.

- 3 -

On April 21, 2015[, Appellant] filed a pleading challenging the [PCRA c]ourt's Notice of Intention to Dismiss. In this reply, [Appellant] incorporated the allegations in the original and supplemental petitions and made argument on some of the claims from those petitions. Before Judge Cashman could address the reply, [Appellant] sought, and obtained, Judge Cashman's recusal.

PCRA Court Opinion and Notice of Intention to Dismiss, 12/15/15, at 2-7.

Prior to his decision to recuse, on June 22, 2015, Judge Cashman issued an order directing that Appellant be released to the custody of the Sheriff of Allegheny County for the purpose of being transported to the court of common pleas pending a hearing. Subsequently, two identical orders were issued pursuant to Appellant's requests for postponement.

After Judge Cashman's recusal, the case was transferred to Judge Jeffrey Manning. On December 15, 2015, Judge Manning filed an opinion and notice of intent to dismiss pursuant to Pa.R.Crim.P. 907. Appellant filed a response in which he argued that Judge Manning violated the coordinate jurisdiction rule by failing to hold the evidentiary hearing that Judge Cashman had granted. On June 9, 2016, Judge Manning filed an order directing that Appellant secure the production of the transcripts of the *voir dire* proceedings, file an amended PCRA petition addressing Appellant's *voir dire* claims, and attach supporting affidavits.

A status hearing was held on November 1, 2016. On November 29, 2016, Appellant filed affidavits and a defense proffer. On December 28, 2016, Judge Manning filed a second opinion and notice of intent to dismiss

pursuant to Pa.R.Crim.P. 907. Appellant filed a response on January 12, 2017. On February 9, 2017, the PCRA court entered an order denying Appellant's PCRA petition. This timely appeal followed. The PCRA court did not direct Appellant to file a Pa.R.A.P. 1925(b) statement. On March 22, 2017, the PCRA court entered an order indicating that its opinions dated December 15, 2015, and December 28, 2016, satisfy the requirements of Pa.R.A.P. 1925(a).

Appellant now presents the following issues for our review:

1. DID THE TRIAL COURT [ERR] IN DISMISSING THE PCRA PETITION WITHOUT A HEARING WHERE PETITIONER MADE A CLEAR SHOWING THAT SEVERAL ALLEGATIONS OF INEFFECTIVE ASSISTANCE OF COUNSEL RAISED A GENUINE ISSUE OF FACT WHICH, IF RESOLVED IN HIS FAVOR, WOULD HAVE ENTITLED HIM TO RELIEF[?]

2. WAS TRIAL COUNSEL … INEFFECTIVE FOR NOT OBJECTING TO THE CLOSING ARGUMENT OF THE PROSECUTOR WHICH BOTH IMPROPERLY BOLSTERED THE CREDIBILITY OF COMMONWEALTH WITNESS AND DENIGRATED THE CREDIBILITY OF THE DEFENSE WITNESS JEROME SOLOMON?

3. WAS THE PETITIONER . . . DENIED EFFECTIVE ASSISTANCE OF COUNSEL AND HIS CONSTITUTIONAL RIGHT TO A PUBLIC TRIAL WHERE TRIAL COUNSEL TOLD PETITIONER'S MOTHER AND AUNT THAT THEY WERE NOT PERMITTED IN THE JURY SELECTION ROOM DURING THE PICKING OF THE JURY[?] [APPELLANT] HAS A SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL AS WELL AS A CONCURRENT RIGHT UNDER THE PENNSYLVANIA CONSTITUTION ARTICLE 1 SECTION 9 AND SECTION 11.

4. TRIAL COUNSEL WAS INEFFECTIVE FOR ALLOWING THE FOLLOWING QUESTION TO BE ASKED WITH NO BASIS IN FACT BUT HIGHLY PREJUDICIAL ALLOWING THE JURY TO INFER A PAST SHOOTING EPISODE ON THE PART OF THE PETITIONER.[]

5. WAS IT REVERSIBLE ERROR IN THE CHARGE TO THE JURY ON ALIBI, WHERE THE TRIAL COURT NEVER INFORMED AND/OR MADE CLEAR TO THE JURY THAT A DEFENDANT'S FAILURE TO PROVE THE ALIBI IS NOT IN AND OF ITSELF A BASIS OF FINDING GUILT AND THAT A REASONABLE DOUBT COULD ARISE BASED UPON ALIBI EVIDENCE EVEN WHERE THE DEFENSE EVIDENCE IS WHOLLY NOT BELIEVED?

Appellant's Brief at 3.

When reviewing the propriety of an order denying PCRA relief, we consider the record "in the light most favorable to the prevailing party at the PCRA level." *Commonwealth v. Stultz*, 114 A.3d 865, 872 (Pa. Super. 2015) (quoting *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*)). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa. Super. 2012). We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. *Commonwealth v. Rigg*, 84 A.3d 1080, 1084 (Pa. Super. 2014).

Appellant first argues that the PCRA court erred in dismissing his PCRA petition without a hearing. Appellant's Brief at 7-10. Specifically, Appellant contends that, because Judge Cashman originally scheduled an evidentiary hearing prior to recusing from the case, Judge Manning subsequently violated the law of the case doctrine by refusing to hold an evidentiary hearing after the case was transferred to him. *Id*. at 8-10.

"Whether the Law of the Case Doctrine precludes review in a given situation is a pure question of law. Therefore, our standard of review is *de novo.*" ***Commonwealth v. Lancit***, 139 A.3d 204, 206 (Pa. Super. 2016) (internal citations omitted).

The law of the case doctrine "refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." ***Commonwealth v. Starr***, 664 A.2d 1326, 1331 (Pa. 1995).

> Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.
>
> The various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy … but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end.

***Id***. (citations omitted). "[T]he law of the case doctrine might not apply under exceptional circumstances, including: an intervening change in the law, a substantial change in the facts, or if the prior ruling was 'clearly erroneous' and 'would create a manifest injustice if followed.'"

*Commonwealth v. McCandless*, 880 A.2d 1262, 1268 (Pa. Super. 2005) (*en banc*) (quoting *Starr*, 664 A.2d at 1332).

In order to obtain relief in the form of an evidentiary hearing, a petitioner must properly plead his claims. 42 Pa.C.S. § 9545. Section 9545(d) of the Post Conviction Relief Act provides as follows:

**(d) Evidentiary hearing.--**

(1) Where a petitioner requests an evidentiary hearing, the petition shall include a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony. Failure to substantially comply with the requirements of this paragraph shall render the proposed witness's testimony inadmissible.

42 Pa.C.S. § 9545(d).

Regarding evidentiary PCRA hearings, we have observed that there is no absolute right to an evidentiary hearing on any PCRA petition. *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008). An evidentiary hearing is not a discovery tool to be utilized by a petitioner to conduct investigation and interrogation to search for support for vague or boilerplate allegations of ineffectiveness. *Commonwealth v. Wells*, 578 A.2d 27, 32 (Pa. Super. 1990).

A petitioner must set forth an offer of sufficient facts, from which a reviewing court can conclude that trial counsel or appellate counsel may have been ineffective, that he intends to prove at an appropriate hearing. This offer must be given before a hearing can be granted. *Wells*, 578 A.2d

at 32. In addition, a petitioner must attach affidavits, records, or other documents which are not a part of the record to his PCRA petition. Pa.R.Crim.P. 902(A)(12) and 902(D).

Our review of the record reflects that Appellant filed the instant PCRA petition on February 20, 2014. PCRA Petition, 2/20/14. Judge Cashman filed a Pa.R.Crim.P. 907 notice of intent to dismiss on March 19, 2014. Notice of Intent to Dismiss, 3/19/14. On April 21, 2014, Appellant filed an "opposition" to the notice of intent to dismiss. Opposition to Notice, 4/21/14.

The record further establishes that the PCRA court filed three transport orders, directing that Appellant be transported to the Allegheny County Courthouse for the purposes of an unspecified hearing before the PCRA court. The text of the first transport order, which appears to be a computer-generated form document, is as follows:

> AND NOW, 22nd day of June, 2015 after consideration of the petition requesting the issuance of a writ of habeas corpus presented by [Appellant] it is ORDERED that the Petition is GRANTED.
>
> It is ORDERED that the Superintendent of the confinement location, SCI Forest shall ensure that [Appellant] appears before this Court on 07/27/2015 at 1:30PM at Courtroom 310 - Allegheny County Courthouse for the purpose of PCRA Hearing and shall release him or her to the Allegheny County Sheriff, the Constable, or other designated/appointed police officer who shall transport [Appellant] to the court[.]
> .
> [Appellant] shall be returned to the SCI Forest upon completion of the PCRA Hearing unless he or she is no longer

subject to a sentence to be served with the SCI Forest or the court orders otherwise.

Transport Order, 6/22/15.

Two additional transport orders were also filed, which reflected that the hearing had been postponed. Transport Orders, 7/17/15 and 9/8/15. Except for the dates and times, the subsequent transport orders were identical to the first transport order. We observe that the record is devoid of a petition requesting the issuance of a writ of *habeas corpus* as stated in the transport orders. In addition, there is no indication in the record concerning the actual purpose of the "PCRA Hearing" mentioned in the transport orders. Moreover, completely missing from the record is any order from the PCRA court specifically granting Appellant an evidentiary hearing.

The record further reflects that on November 4, 2015, this matter was transferred from Judge Cashman to Judge Manning. On December 15, 2015, Judge Manning issued an opinion and notice of intent to dismiss pursuant to Pa.R.Crim.P. 907. Opinion and Notice, 12/15/15. On January 27, 2016, Appellant filed an "opposition" to Judge Manning's notice of intent to dismiss, in which Appellant claimed that Judge Manning violated the coordinate jurisdiction rule by failing to hold the "evidentiary hearing" that Judge Cashman had allegedly granted. Opposition to Notice, 1/27/16.

On June 9, 2016, Judge Manning filed an opinion and order addressing Appellant's claim that Judge Manning had violated the law of the case doctrine. Specifically, Judge Manning's order stated the following:

- 10 -

The dockets do not include any orders from Judge Cashman addressing the merits of the claims after the filing of [Appellant's] reply to the Notice to Dismiss or indicating that [Appellant] was entitled to an evidentiary hearing on none, one, some or all of the claims. The three orders identified above establish nothing more than the scheduling of proceedings to address the PCRA Petition. To suggest that those orders indicated that Judge Cashman concluded that an evidentiary hearing was required to address each and every claim is erroneous.

[Appellant] contends in his reply that [the PCRA c]ourt was required to hold an evidentiary hearing because Judge Cashman's scheduling orders constituted a determination that [Appellant] had established that an evidentiary hearing was required to address the claims. . . . The record in this case establishes that there was no decision by Judge Cashman that [Appellant] was entitled to an evidentiary hearing on the claims included in [Appellant's] initial and subsequent PCRA Petitions.

PCRA Court Opinion and Order, 6/9/16, at 2-3 (unnumbered).

Upon review of the record, we are constrained to agree with Judge Manning's conclusion that Judge Cashman did not explicitly grant an evidentiary hearing in this matter. Accordingly, we cannot conclude that Judge Manning, who received this case upon transfer from Judge Cashman, altered the resolution of a legal question previously decided by Judge Cashman. Hence, Appellant's claim lacks merit.

In his remaining issues, Appellant challenges the effective assistance of trial counsel. Our Supreme Court has long stated that in order to succeed on a claim of ineffective assistance of counsel, an appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the

ineffectiveness of counsel caused the appellant prejudice. ***Commonwealth v. Pierce***, 786 A.2d 203, 213 (Pa. 2001).

We have explained that trial counsel cannot be deemed ineffective for failing to pursue a meritless claim. ***Commonwealth v. Loner***, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*). Moreover, with regard to the second prong, we have reiterated that trial counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." ***Commonwealth v. Ervin***, 766 A.2d 859, 862-863 (Pa. Super. 2000) (quoting ***Commonwealth v. Miller***, 431 A.2d 233 (Pa. 1981)).

Our Supreme Court has discussed "reasonableness" as follows:

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable* basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

***Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987) (quoting ***Commonwealth ex rel. Washington v. Maroney***, 235 A.2d 349 (Pa. 1967)) (emphasis in original).

In addition, we are mindful that prejudice requires proof that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. ***Pierce***, 786 A.2d at 213. "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim

of ineffectiveness." ***Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009) (citing ***Commonwealth v. Sneed***, 899 A.2d 1067 (Pa. 2006)). Thus, when it is clear that a petitioner has failed to meet the prejudice prong of an ineffective-assistance-of-counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. ***Commonwealth v. Baker***, 880 A.2d 654, 656 (Pa. Super. 2005).

It is presumed that the petitioner's counsel was effective, unless the petitioner proves otherwise. ***Commonwealth v. Williams***, 732 A.2d 1167, 1177 (Pa. 1999). Moreover, we are bound by the PCRA court's credibility determinations where there is support for them in the record. ***Commonwealth v. Battle***, 883 A.2d 641, 648 (Pa. Super. 2005) (citing ***Commonwealth v. Abu-Jamal***, 720 A.2d 79 (Pa. 1998)).

Appellant's initial claim of ineffective assistance is that trial counsel erred in failing to object at the time of the prosecutor's closing remarks. Appellant's Brief at 11-20. Appellant alleges that the prosecutor improperly bolstered the credibility of a Commonwealth witness and denigrated the credibility of a defense witness. Appellant contends that defense counsel was ineffective for failing to lodge objections to the prosecutor's comments. More specifically, Appellant takes umbrage with the following statements made by the prosecutor during the closing argument:

> Ladies and gentlemen, it is a smear game plan. You heard Dwayne Morris. That man was not lying.

- 13 -

N.T., 3/17-23/05, at 411.[2]

DeWayne Morris told you the truth.

*Id*. at 412.[3]

It is because of [Appellant that Shaheeda Walker] is going to get 10 years in jail.

*Id*. at 416.[4]

_____

[2] The full text of the prosecutor's comments is as follows:

Ladies and gentlemen, it is a smear game plan.

You heard DeWayne Morris. That man was not lying. He was not jonesing on the stand. Maybe he was a little nervous. Maybe there were unfamiliar faces in the gallery. Maybe he was thinking about witness protection. Get me out of here quickly. What am I doing testifying? He wasn't jonesing. They sent him to a heroin program because he relapsed to two bags a day because of what he saw.

N.T., 3/17-23/05, at 411-412.

[3] This statement by the prosecutor was offered in the following framework:

DeWayne Morris told you the truth. He told you what he saw. He's known [Appellant] for years. He's known him for years. He didn't come forward on his own. Nobody in Homewood comes forward on their own. When [eyewitness] Tony Boyd told Detective Nutter you better ask DeWayne Morris because DeWayne and I both saw [Appellant]. We saw each other after the shooting and he said did you see who did it. Yeah, I seen it. It was [Appellant]. I know who it was. And that happened on Frankstown Avenue. They both testified to the same thing. They both saw [Appellant]. They both knew [Appellant].

N.T., 3/17-23/05, at 411-412.

> You want to talk about criminal falsehood, people you should not believe. Let's talk about Jerome Solomon. . . .

*Id*. at 391.[5]

"The standard for granting a new trial because of the comments of a prosecutor is a high one." ***Commonwealth v. Poplawski***, 852 A.2d 323, 327 (Pa. Super. 2004). "[R]eversible error arises from a prosecutor's comments only where their unavoidable effect is to prejudice the jurors,

*(Footnote Continued)* _____

[4] The prosecutor's comment pertaining to Shaheeda Walker was offered in the following context:

> But I can tell you one thing. [Shaheeda Walker], she does not want to believe that [Appellant], the first love of her life, is the one that put that bullet in that little girl. No. She is here to testify for you because of one person, [Appellant]. He is the one that put [Shaheeda's] wheels on that trackless path to the world of drug deals. This man who would hold himself up as the great higher education advocate. No, [Appellant] is the one that got [Shaheeda] involved in drug deals. It is because of him she is going to get 10 years in jail. It is because of him she had to come in and testify against him.

N.T., 3/17-23/05, at 415-416.

[5] The prosecutor's complete comment regarding Jerome Solomon, which was made while discussing multiple witnesses with *crimen falsi* convictions, was as follows:

> You want to talk about criminal falsehood, people you should not believe. Let's talk about Jerome Solomon who in his prison red to talk about all his scrapes, retail theft dating back to 1986, and his counselor who couldn't keep him out of jail because all he had was dirty urines and retail theft to support his habit. You want to talk about crimes of falsehood.

N.T., 3/17-23/05, at 391.

forming in their minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict."

*Commonwealth v. Busanet*, 54 A.3d 35, 64 (Pa. 2012) (citation omitted).

> This standard permits us to grant a new trial based on the comments of a prosecutor only if the unavoidable effect of the comments prevented the jury from considering the evidence. A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present his or her arguments with logical force and vigor.

*Poplawski*, 852 A.2d at 327.

> We are further mindful of the following:
>
>> In determining whether the prosecutor engaged in misconduct, we must keep in mind that comments made by a prosecutor must be examined within the context of defense counsel's conduct. It is well settled that the prosecutor may fairly respond to points made in the defense closing. Moreover, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair.
>
> *Commonwealth v. Judy*, 978 A.2d 1015, 1019-1020 (Pa. Super. 2009) (quotations, quotation marks, and citations omitted). *See Commonwealth v. Ragland*, 991 A.2d 336 (Pa. Super. 2010).

*Commonwealth v. Hogentogler*, 53 A.3d 866, 878 (Pa. Super. 2012). In addition, we have long stated that "[d]uring closing argument, a prosecutor may comment on the credibility of a Commonwealth's witness, especially where that witness'[s] credibility is attacked by the defense." *Commonwealth v. La*, 640 A.2d 1336, 1347 (Pa. Super. 1994).

In addressing this claim of ineffective assistance of counsel, the PCRA court offered the following analysis that concentrated on the merit of the underlying claims of prosecutorial misconduct during the closing argument:

There is no factual dispute as to the statements made [by] the prosecutor in his closing argument that [Appellant] challenges as being improper. Because this [c]ourt finds that the statements were not improper, these claims will be denied without a hearing.

It is well settled that comments made by a prosecutor in closing argument will constitute error only where the unavoidable effect of the comments is to prejudice the jury by forming in their minds fixed bias and hostility toward a defendant such that they could not weigh the evidence objectively and render a true verdict. The comments must be weighed cumulatively rather than individually. If cumulatively they amount to improper and prejudicial, then a new trial will be granted. Commonwealth v. Cottam, 616 A2.3 988, 996 (Pa. 1992). The Supreme Court in Cottam also noted, however, that the comments must be viewed in context; that it is proper for a prosecutor to rebut a defense counsel's arguments, and that a prosecutor may vigorously argue his case as long as his comments are supported by the evidence or can be inferred from the evidence. *Id*. Moreover, a prosecutor is permitted to comment on the testimony of the witness and to make argument as to that witness'[s] credibility and to respond to credibility arguments raised by defense counsel.

This [c]ourt has reviewed the closing arguments of counsel for both defendants as well as for the prosecution. It is clear that each of the . . . statements that [Appellant] contends were improper were not, in the context of this trial, and the evidence presented, improper. The first two comments were proper responses to defense counsel's attack on the credibility of Dwayne Morris. [Appellant's] counsel, after discussing Morris'[s] drug use, told the jury that during his testimony, Dwayne Morris "...looked like he was jonesing on the stand, like he needed another fix." ([N.T., 3/17-23/05, at] 315-316). He also reminded the jury of Morris'[s] *crimen falsi* convictions and argued that they affected [Morris's] credibility. ([***Id***. at] 316). [Defense counsel] then argued that because Morris received

assistance with living expenses through the witness protection program he had an inducement to "...come in and say something that he thinks is going to benefit the Commonwealth because he is not going to get this anywhere else." ([*Id*. at], 317). Clearly, defense counsel was arguing to the jury that Morris was not a person worthy of belief. This entitled the [C]ommonwealth to rebut those claims with argument as to why the jury should believe the witness.

The remarks about Shaheeda Walker were similarly a proper response to defense counsel's argument that she lacked credibility. [Appellant's] attorney told that jury that Walker faced ten years in jail but was hoping for leniency in exchange for her testimony. ([N.T., 3/17-23/05, at] 322). It was proper, then, for the Commonwealth to point out that the crimes she committed that put her at risk for lengthy incarceration were done in the service of [Appellant].

Likewise, it was entirely proper for the Commonwealth to question the credibility of defense witness Jerome Solomon and of [Appellant] himself. The Commonwealth introduced evidence of Solomon's conviction for crimes of falsehood. [N.T., 3/14-15/05, at 339-345.] It is axiomatic that such convictions can be used to challenge the credibility of the witness. Pa. Rule of Evidence 609. The jury was instructed as such. [N.T., 3/17-23/05, at 462-463, 468-469, and 565-566.] It was wholly proper for the Commonwealth to argue to the jury that the evidence of the witness'[s] conviction for a crime of falsehood should be considered by them in weighing his credibility.

. . . Accordingly, because the prosecution's argument was proper, these claims are without merit as a matter of law and will be dismissed without a hearing.

PCRA Court Opinion and Notice of Intent to Dismiss, 12/15/15, at 9-11.

Upon our complete review of the record, we are constrained to agree with the PCRA court that the comments of the prosecutor were appropriate. It is our determination that the prosecutor's comments were within the bounds of oratorical flair and constituted fair response to Appellant's attacks

on the witnesses' credibility. For these reasons, we conclude that trial counsel was not ineffective for failing to object to the above-referenced statements, and that a mistrial would not have been warranted in any event. Hence, Appellant's claims of trial counsel ineffectiveness are without merit.

Appellant next argues that trial counsel was ineffective for allegedly informing Appellant's mother and aunt that they were not permitted into the courtroom during the jury selection process. Appellant's Brief at 21-28. Appellant asserts that trial counsel's comments to these two family members somehow resulted in Appellant being denied his constitutional right to a public trial.

In addressing this claim, we begin by acknowledging the following well-established general legal principles pertaining to the right to trials being open to the public:

> The Sixth Amendment right to a public trial in a criminal case is binding on the states through the due process clause of the Fourteenth Amendment.
>
> The Pennsylvania Constitution likewise guarantees an accused's right to a public trial. The right to a public trial is applicable to *voir dire* proceedings.
>
> * * *
>
> In determining whether the *voir dire* procedure ... violated [a defendant's] right to a public trial, we keep in mind that such right serves two general purposes: (1) to prevent an accused from being subject to a star chamber proceeding; and (2) to assure the public that standards of fairness are being observed. The public's right to attend a trial is not absolute, and exists as a guarantee of fairness in

judicial conduct during criminal court proceedings. Where trial courts perceive a threat to the orderly administration of justice in their courtrooms by an unmanageable public, they may always place reasonable restrictions on access to the courtroom, so long as the basic guarantees of fairness are preserved such as by the presence of the press and the making of a record for later review.

The question in a particular case is whether that control [over the courtroom] is exerted so as not to deny or unwarrantedly abridge ... the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places.

*Commonwealth v. Phillips*, 946 A.2d 103, 109 (Pa. Super. 2008) (citations and quotation marks omitted).

Interestingly, Appellant attempts to avoid proving the prejudice prong of this claim of ineffective assistance of counsel. Appellant argues in his brief to this Court that "[t]he fact that his attorney purposefully misled [Appellant] and his family into giving up the aforesaid constitutional protection is even more egregious than if the trial court did it and that should be ineffectiveness per se." Appellant's Brief at 23. Appellant contends that "[b]ecause denial of a public trial is structural error, it would be impossible for [Appellant] to establish actual prejudice, and as such, it must be presumed." *Id*. at 27.

Appellant's presumption of prejudice argument is correct in the context of a direct appeal. *See Sullivan v. Louisiana*, 508 U.S. 275, 281-282 (1993) (explaining that harmless-error review does not pertain to structural errors); *Commonwealth v. Rega*, 20 A.3d 777, 786 (Pa. 2013) (stating

"various courts have found a violation of the right to a public trial to be in the nature of a structural error"). *See also Waller v. Georgia*, 467 U.S. 39, (1984) (concluding, in context of a direct appeal, that "the defendant should not be required to prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee"). However, where, as here, a public-trial violation is asserted in the context of an ineffective assistance of counsel claim, the petitioner must prove that prejudice resulted from counsel's conduct. *See Rega*, 20 A.3d at 787 (holding that because the appellant "did not object to the after-hours courtroom arrangements [which ostensibly violated his right to a public trial], the only cognizable aspect of his claim is that of deficient stewardship, as to which he must establish prejudice") (citation omitted); *Commonwealth v. Johnson*, 500 A.2d 173, 177 (Pa. Super. 1985) (applying the "actual prejudice" standard when assessing the appellant's claim that his right to a public trial was violated, and that counsel acted ineffectively by failing to object to the court's conducting nonpublic jury selection). Here, Appellant offers no discussion pertaining to how he was prejudiced by trial counsel allegedly informing his mother and aunt that they could not attend the jury selection proceeding. *See* Appellant's Brief at 21-28 (alleging only that prejudice is presumed where a violation of the right to a public trial occurs). Accordingly, we conclude that Appellant has failed to demonstrate that he was prejudiced by

trial counsel's conduct. Consequently, Appellant is not entitled to relief on this claim of ineffective assistance of counsel.

Appellant next argues that trial counsel was ineffective for failing to object to a particular line of questioning posed by the prosecutor during cross-examination of Appellant. Appellant's Brief at 29-33. Specifically, Appellant asserts the following:

> In the case sub judice, the objection to the prejudicial leading question assuming, without any factual basis, that [Appellant] was engaged in an earlier shooting of [Thomas] Mitchell which left him a paraplegic was made the next court day after the defense had rested and the Commonwealth had called three rebuttal witnesses was untimely and had no legal effect. By not raising a timely objection, trial counsel permitted error to insinuate itself into the record and complaining thereafter to no avail.
>
> Even though the petitioner denied it, the seed was planted in the minds of the jury that maybe, just maybe, [Appellant] was involved in the earlier shooting of Mitchell, making it more likely he was involved with Mitchell in this case.

Appellant's Brief at 31 (citation omitted).

In addressing this issue, we reiterate that the law-of-the-case doctrine "refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." **Starr**, 664 A.2d at 1331. "Among the related but distinct rules which make up the law of the case doctrine are that: . . . upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court[.]" **Id**.

The particular line of cross-examination of Appellant was as follows:

Q.  You know Sean [Connolly] was accused of shooting Tommy Mitchell and putting him in the chair?

A.  I know that, yes.

Q.  You know that he was one of two masked guys that was supposed to have done that?

A.  No, I don't know that.

Q. You don't know that there's a second unidentified masked guy involved in the shooting of Tommy Mitchell?

A.  No, sir, I don't know.

Q.  So that wasn't you with Sean Connolly back in the day that put Tommy Mitchell in the chair?

A. Absolutely not, sir.

N.T., 3/17-23/05, at 150.

Our review of the record reflects that defense counsel did not make a timely objection to the above-referenced exchange.  Rather, later in the proceedings, trial counsel made the following objection and request for a mistrial:

> At this time, Your Honor, I would bring to the [trial c]ourt's attention that [the prosecutor] in his cross-examination of [Appellant] asked him certain questions . . . .  He also asked [Appellant] you are aware of fact that Thomas Mitchell was shot and placed in that wheelchair 10 years ago and there was Sean Connolly who was charged with the shooting and convicted of it. There was a second individual with him.  Were you that second individual with him?  Didn't you get letters from Sean Connolly? Don't you know Sean Connolly?  Haven't you talked to him?  My client answered no that he was not the second individual.  He said that he did not receive any letters from Sean Connolly.  All of this was highly suggestive of my client having been involved

- 23 -

in other criminal conduct. The questioning wasn't structured in such a way did you, it was structured in such a way isn't it true that you did that and did this. It was highly prejudicial and dealt with other criminal conduct. I'm objecting to the form of it. It is appropriate now for me to put that objection in since I waited to see if [the prosecutor] was going to offer testimony in rebuttal to support these allegations that he made, the old allegations that he made before the jury that are highly prejudicial and, accordingly, since they had not been supported, I am moving for a mistrial.

N.T., 3/17-23/05, at 276-277. The trial court then denied the motion for mistrial. *Id*. at 279-280.

In his direct appeal to this Court, Appellant raised the following pertinent issue:

IV. Did the prosecutor's questioning of [Appellant] about an incident years earlier in which one of the homicide victims was shot and rendered paraplegic warrant a mistrial?

***Commonwealth v. Crisswalle***, 46 A.3d 824, 1261 WDA 2005 at 3 (Pa. Super. 2012) (unpublished memorandum).

The trial court addressed this issue in its Pa.R.A.P. 1925(a) opinion as follows:

[Appellant] has also suggested that a mistrial should have been granted since the District Attorney through questions asked of [Appellant], attempted to infer that [Appellant] in some way had been involved in the shooting of Thomas Mitchell that resulted in him being a paraplegic. [Appellant] denied that he was responsible and similarly denied that he had any relationship with [Sean Connolly]. [Sean Connolly] was suspected of being the individual who shot Mitchell, however he was one of two shooters, the second person never having been identified. [Appellant], in response to these questions, denied he was the second shooter, denied he had any relationship with [Sean Connolly] and denied that he had ever received any material from [Sean Connolly]. During [Shaheeda] Walker's testimony

- 24 -

she indicated that [Appellant] told her that he had killed Mitchell because Mitchell had a hit out on him. The questions that were being asked of [Appellant] during cross-examination attempted to establish a possible motive for Mitchell putting a hit out on [Appellant] and Mitchell's belief that [Appellant] was responsible for the first shooting. [Appellant] denied knowing [Sean Connolly] and being involved in Mitchell's first shooting. Accordingly, there was no need for a mistrial with respect to these questions.

Trial Court Opinion, 1/15/10, at 67-68. In reviewing Appellant's claim, this Court affirmed on the basis of the trial court's analysis of the issue. ***Crisswalle***, 1261 WDA 2005 (unpublished memorandum at 4-5). Therefore, on direct appeal this Court resolved that the particular line of questioning was proper and concluded that a mistrial was not warranted. We are not permitted to alter the resolution of a legal question previously decided by this Court. Hence, it is our determination that Appellant has failed to establish that the underlying claim has merit. Thus, this allegation of ineffective assistance of counsel fails.

Appellant last argues that trial counsel was ineffective for failing to object to the trial court's alibi instruction to the jury. Appellant's Brief at 34-36. Specifically, Appellant summarizes his claim as follows:

In the case at bar, the trial court's charge on alibi was not clear or totally accurate because there was no mention made that there could be a reasonable doubt even if the jury disbelieved [Appellant's] alibi or believed a part of it but not in its whole.

Trial counsel was ineffective for not objecting to the incorrect alibi charge, both the original and supplemental alibi charge. Counsel's failure to object to the alibi charge had no reasonable strategic basis designed to further the interests of

the petitioner, the issue has arguable merit and the petitioner was prejudiced by the charge. But for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. If the jury believed that the petitioner could raise a reasonable doubt even where they discredited his alibi, then the jury could have found him not guilty of these charges.

Appellant's Brief at 36 (citation omitted).

When reviewing a jury instruction challenge, we look to "the jury charge as a whole to determine if it is fair and complete. Reversible error occurs [o]nly where there is an abuse of discretion or an inaccurate statement of the law." *Commonwealth v. Hanford*, 937 A.2d 1094, 1097 (Pa. Super. 2007) (citations and internal quotation marks omitted). "The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." *Commonwealth v. Fletcher*, 986 A.2d 759, 792 (Pa. 2009). "It is well-established that the standard jury instructions are merely guides to aid trial judges." *Commonwealth v. Soto*, 693 A.2d 226, 231 (Pa. Super. 1997).

An alibi is "a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." [*Commonwealth v. Roxberry*], 602 A.2d [826,] 827 [(Pa. 1992) (*Roxberry II*)] (quoting *Commonwealth v. Jones*, 529 Pa. 149, 602 A.2d 820, 822 (1992)). In *Commonwealth v. Pounds*, [417 A.2d 597 (Pa. 1980),] we held that a trial court, faced with alibi evidence,[3] should instruct a jury generally that "it should acquit if defendant's alibi evidence, even if not wholly believed, raises a reasonable doubt of his presence at the scene of the crime at the time of its commission and, thus, of his guilt." [*Pounds*, 417 A.2d at 603].

- 26 -

The instruction,[4] we held, is critically important to offset "the danger that the failure to prove the defense will be taken by the jury as a sign of the defendant's guilt." *Id.* We explained that the defendant bears no burden of proof in a criminal case, and that to infer guilt based upon a failure to establish an alibi "contravenes the presumption of innocence and the Commonwealth's burden of proving the offense beyond a reasonable doubt." *Id.* at 603 n. 17. Given these concerns, we have held unequivocally that "a defendant is entitled to an alibi instruction when evidence of alibi ... has been introduced." *Id.* at 602 (citing ***Commonwealth v. Bonomo***, 396 Pa. 222, 151 A.2d 441 (1959)). Further, we held in ***Pounds*** that "general instructions on the Commonwealth's burden of proving each element of the offense beyond a reasonable doubt, the absence of a burden of proof on the defendant, and assessing the credibility of witnesses do not adequately protect against" the danger posed by the misapprehensions a jury might indulge regarding the relevance and effect of alibi evidence. *Id.* at 603.

[3] Although an alibi defense typically is presented with accompanying testimonial or other evidence, "the testimony of the accused may, by itself, be sufficient to raise an alibi defense and entitle him to an appropriate jury instruction." ***Pounds***, 417 A.2d at 602.

[4] A model alibi instruction follows:

> In this case, the defendant has presented evidence of an alibi, that is, that [he] was not present at the scene or was rather at another location at the precise time that the crime took place. You should consider this evidence along with all the other evidence in the case in determining whether the Commonwealth has met its burden of proving beyond reasonable doubt that a crime was committed and that the defendant [himself] committed or took part in committing] it. The defendant's evidence that [he] was not present, either by itself or together with other evidence, may be sufficient to raise a

> reasonable doubt of [his] guilt. If you have a reasonable doubt of the defendant's guilt, you must find [him] not guilty.
>
> Pa. Suggested Std. Crim. Jury Instr. § 3.11. Although courts are not bound to utilize this precise instruction, **see Commonwealth v. Ragan**, 560 Pa. 106, 743 A.2d 390, 399 (1999) (declining to require use if the "even if not wholly believed" language used in Pounds); **cf. Commonwealth v. Blount**, 538 Pa. 156, 647 A.2d 199, 209 (1994) ("The trial court has discretion in phrasing its instructions to the jury ...."), an alibi instruction should simply "indicate that the failure of the evidence to prove alibi is not evidence of guilt, that the defendant bears no burden to disprove any element of the offense, and alibi evidence may negate proof beyond a reasonable doubt even if it is not wholly believed...." Pa. Suggested Std. Crim. Jury Instr. § 3.11, Adv. Comm. Note.

**Commonwealth v. Hawkins**, 894 A.2d 716, 717-718 (Pa. 2006).

In addition, we observe that our Supreme Court offered the following direction regarding alibi defense instructions:

> An alibi instruction is proper so long as, when taken as a whole, the instruction makes clear to the jury that a defendant's failure to prove the alibi is not in and of itself a basis for a finding of guilt and that a reasonable doubt could arise based upon alibi evidence even where the defense evidence is not wholly believed. **Commonwealth v. Saunders**, 529 Pa. 140, 602 A.2d 816 (1992). As we stated in **Saunders**:
>
> > An [alibi] instruction is proper if it expressly informs the jury that the alibi evidence, either by itself or together with other evidence, could raise a reasonable doubt as to the defendant's guilt and clearly directs the jury to consider this evidence in determining whether the Commonwealth met its burden of proving beyond a reasonable doubt that the crime was committed by the defendant. A

- 28 -

> charge which meets this standard would not be taken to mean that by introducing alibi evidence the defense assumed a burden of proof, which, if not met, could provide a basis for a finding of guilt.
>
> Further, by instructing the jury that the defense evidence on alibi 'either by itself or together with the other evidence' could raise a reasonable doubt, the trial court correctly conveyed that a reasonable doubt could arise based upon alibi even where the defense evidence was not wholly believed.

*Id*. at 145, 602 A.2d at 818.

***Commonwealth v. Begley***, 780 A.2d 605, 629 (Pa. 2001).

The PCRA court addressed Appellant's claim of ineffective assistance of counsel for failing to object to the propriety of the trial court's alibi defense as follows:

> Here, the Court instructed the jury twice on the alibi defense. The jury was told that they should consider the evidence presented that claimed that [Appellant] was not present when and where the shootings occurred in determining whether the Commonwealth had met its burden of proving the elements of the crimes charged beyond a reasonable doubt. They were told that the alibi evidence, "Either by itself or together with other evidence may be sufficient to raise a reasonable doubt ..." ([N.T., 3/17-23/05, at] 471). This properly apprised the jury as to how they should consider this evidence.
>
> When the jury asked to be charged again on reasonable doubt, Judge Cashman recounted the alibi defense presented and told the jury, "Now, if somebody is not present at the scene of the crime, they can't be committing that particular crime. if they are not there, they cannot be the particular individual that committed that crime." ([N.T., 3/17-23/05, at] 536). Taking these instructions on alibi as a whole, the jury was given the proper parameters for weighing and considering the alibi evidence presented. Accordingly, trial counsel was not ineffective for failing to object to a jury instruction that was proper and this claim will be dismissed without a hearing.

- 29 -

PCRA Court Opinion and Notice of Intent to Dismiss, 12/15/15, at 11-12.

Our review of the record reflects that the trial court gave the following instruction to the jury prior to the jury retiring for deliberations:

> Now, [Appellant] in this case presented alibi testimony. As a result, a defendant cannot be guilty of a crime unless he is at the scene of the commission of that crime. . . . [Appellant] presented alibi testimony and that is that he was not present at the scene but rather he was in Penn Hills and, in fact, his aunt had come to his residence to obtain money to use as bar change for the club that she was managing. You should consider all of this evidence in determining whether or not the Commonwealth has met its burden of proving each and every element of the offenses charged beyond a reasonable doubt.
>
> [Appellant] testified that he was not present. Either by itself or together with other evidence may be sufficient to raise a reasonable doubt as to whether or not the individual or collective guilt with respect to these charges has been proven beyond a reasonable doubt. You would consider the evidence of alibi testimony as you would consider the testimony of all of the other evidence given to you in this case.

N.T., 3/17-23/05, at 470-471.

The record further indicates that, during deliberations, the jury sent a question to the trial judge asking that they be recharged with certain instructions. Specifically, the trial court noted:

> We have received a question from you[, the jurors,] and that is can we please be recharged for the homicide charges and the definition of reasonable doubt and how to judge the evidence. Based upon kind of the generic last phrase I'm going to charge you in the entirety because there are a lot of different ways you can consider different pieces of evidence and I think you probably should have the entire charge.

*Id*. at 517.

Thereafter, the trial court proceeded to recharge the jury with the complete set of instructions. *Id*. at 518-559. Upon reaching the alibi instruction, the trial court gave the following supplemental charge:

> Now, [Appellant] had presented alibi testimony. In this regard, [Appellant] presented testimony that he was in a Penn Hills residence where his aunt had come to get money from him at the time the shooting took place because she was in need of money to allow the cash register to operate in the back bar of the night club where she was the manager. . . . Now, if somebody is not present at the scene of the crime, they can't be committing that particular crime. If they are not there, they cannot be the particular individual that committed the crime. That is the nature of an alibi defense: I didn't do this particular crime because I wasn't there.
>
> You will consider the alibi testimony in this regard as you will consider the testimony of all of the other individuals who have come forward regardless of the nature of their particular testimony.

N.T., 3/17-23/05, at 536.

Review of the jury charge, taken as a whole, supports the PCRA court's conclusion that the jury was correctly instructed on the proper points for weighing and considering alibi evidence. The entirety of the instructions appropriately set forth the correct legal principles to be utilized by the jury in deliberating the evidence presented. Accordingly, Appellant has not established that his claim of ineffective assistance of counsel for failure to object to the trial court's instruction has arguable merit. Thus, this final claim of ineffective assistance also fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/1/2018